# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Civil Action No. 1:18-cv-03096-RM-KLM

LAURA SELLITTO,

    Plaintiff,

v.

VAIL CORPORATION d/b/a Vail Resorts Management Company,

    Defendant.

___

# ORDER
___

This matter is before the Court on Defendant's partial motion to dismiss (ECF No. 18), seeking dismissal of five of the six claims asserted by Plaintiff in the first amended complaint (ECF No. 17). Plaintiff has filed a response (ECF No. 28), in which she concedes that dismissal of three of those claims (Claims Four, Five, and Six) is appropriate. Defendant filed a reply. (ECF No. 28.) The Court has reviewed the pleadings, case file, and applicable law. For the reasons stated below, the motion is granted.

**I.    LEGAL STANDARD**

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to

relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

To determine whether a claim is plausible, a court considers "the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quotation omitted). However, if the allegations "are so general that they encompass a wide swath of conduct, much of it innocent," the plaintiff has not "nudged [her] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quotation omitted).

## II. BACKGROUND

The following facts are taken from the first amended complaint and are viewed in the light most favorable to Plaintiff. Plaintiff was fifty-five when she was hired by Defendant as a senior developer in July 2017. (ECF No. 17 at ¶ 7, 11.) She resigned five months later. (*Id.* at ¶ 46.) The only training Defendant provided Plaintiff was "a one-hour 'white board session'" with her supervisor. (*Id.* at ¶ 16.) Plaintiff was repeatedly criticized by her supervisor for being too slow and not completing enough work. (*Id.* at ¶ 18.) According to the complaint, these and other criticisms Plaintiff received "were false and exaggerated, and they would not have been brought against younger and male employees under the same or similar circumstances." (*Id.*) Plaintiff's supervisor shared his criticism of Plaintiff with his own supervisor. (*Id.* at ¶ 27.)

Plaintiff was further criticized for stepping away from a meeting to make calls in November 2017 and alleges that "no other employee—younger, male, or disabled—would have been, or was, so criticized under the same circumstances." (*Id.* at ¶ 23.)

Plaintiff explained to Defendant that she disagreed with the criticisms she received. (*Id.* at ¶ 19.) She also informed Defendant she had been diagnosed with attention deficit hyperactivity disorder ("ADHD"), "which she sometimes referred to as mild autism." (*Id.* at ¶ 20.) Although Plaintiff complained about discrimination, Defendant conducted no investigations based on her complaints. (*Id.* at ¶¶ 23, 24, 29.) And despite the relentless criticism of Plaintiff's job performance, Defendant employed none of its various forms of discipline. (*Id.* at ¶ 40.) Instead, Plaintiff was required to participate in one-on-one weekly meetings, during which she faced more criticism. (*Id.* at ¶ 41.) Plaintiff perceived the criticism of her job performance as "harassment" and alleges that she was "constructively terminated from her job" and forced to resign in December 2017. (*Id.* at ¶¶ 46, 80.)

## III. ANALYSIS

In addition to the allegations summarized above, the complaint contains numerous conclusory and general assertions of discrimination that are not supported by factual allegations. For example, Plaintiff alleges that (1) her supervisor's "criticisms were inaccurate, exaggerated and unfair" (*id.* at ¶ 19); (2) her supervisor "had no legitimate reason to criticize [her] job performance (*id.* at 22); (3) her "mistreatment . . . grew worse" (*id.* at ¶ 25); (4) "[c]omparable male employees who were not over 40 years old, had no disabilities, and/or had not complained about discrimination were treated leniently or not disciplined at all as compared to plaintiff for identical or similar alleged shortcomings in their job performance, or were not falsely criticized"

3

(*id.* at ¶ 44); (5) "[t]he actions against plaintiff were because of her age, her disability and her sex, and because she complained about discrimination" (*id.* at ¶ 45); "[c]orporate management waged a campaign to undermine plaintiff in her work setting, brand her as an undesirable, and treat her as an incompetent" (*id.* at ¶ 47); and (6) "[t]he escalation of criticisms against plaintiff was discriminatory and retaliatory" (*id.* at ¶ 50). Such allegations are not presumed to be true for present purposes and are disregarded in the following analysis. *See Khalik*, 671 F.3d at 1193 (striking conclusory allegations that the plaintiff was "targeted" because of her protected status, that she was "subjected to a false investigation and false criticism," and that the defendant's stated reasons for adverse employment actions were "exaggerated and false").

The Court also disregards legal conclusions couched as statements of belief. For example, the complaint states that Plaintiff "recognized the discriminatory treatment" she received (*id.* at ¶ 23) and that she "believed" Defendant's agents and employees "were specifically trying to drive her out of the company because of her sex, age and disability, as well as her complaints of discrimination (*id.* at ¶ 30). The Court is not bound to accept the non-factual assertions within these statements as true. *See Twombly*, 505 U.S. at 555.

A.  **Title VII Claim (Claim Two)**

Title VII of the Civil Rights Act prohibits discrimination based on sex. 42 U.S.C. § 2000e-2(a)(1). Where, as here, a plaintiff does not point to direct evidence of discrimination, discrimination claims are analyzed based on the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The first step under that framework requires the plaintiff to "establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less

4

favorably than others not in the protected class. *Khalik*, 671 F.3d at 1192. If the plaintiff establishes a prima facie case of discrimination, then the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Once the defendant does so, the burden shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is a pretext for discrimination. *Id.*

Here, Plaintiff satisfies the first element of a prima facie case because she is female. As for the second element, Plaintiff alleges that the conditions of her employment amounted to a "constructive discharge" (ECF No. 17 at ¶ 46), that she was repeatedly subjected to negative and false criticisms (*id.* at ¶¶ 18, 19, 23, 27, 36, 37, 43, 47, 48, 50), and that she was forced to attend weekly one-on-one meetings (*id.* at ¶ 41). The Court need not determine whether these allegations amount to adverse employment action (a potentially cumbersome task given the complaint's apparent disdain for detail) because factual allegations to support the other elements of a prima facie case of discrimination are clearly lacking.

As for the third element, the only allegations showing Plaintiff was qualified for her position are that she was hired (*id.* at ¶ 13), that she assessed her job performance as "good-to-excellent" (*id.* at ¶ 48), and that she received compliments regarding her performance from another senior developer (*id.*). But these allegations are insufficient to establish that she was qualified for her position. If a plaintiff could establish that she was qualified for her position simply because she was hired, thought she was doing an adequate job, and received a few compliments from a colleague, the third prong of the prima facie case would be irrelevant in employment termination cases. Viewed in the light most favorable to Plaintiff, the allegation

that she was "the best applicant for the job" (*id.* at ¶ 13) shows only that Defendant may have believed she was qualified for the position when it hired her; it does not create an ongoing presumption that she was in fact qualified for the position or that she ever performed her job in a satisfactory manner. Plaintiff's self-assessment of her performance is also unavailing because employers and employees often disagree about whether an employee's performance is adequate. The Court is not required to accept Plaintiff's conclusory and entirely subjective assertion that she was qualified for her position.[1] Under these circumstances, Plaintiff has not shown there is evidence she was qualified for her position.

The most glaring deficiency of Plaintiff's complaint is that it fails to allege facts showing the fourth element, that she was treated less favorably than similarly situated male employees. Although she alleges that male employees "would not have" been subject to the same treatment for similar conduct (*id.* at ¶ 18, 23), her factual allegations fail to describe similar conduct that actually occurred. Nor do they identify an actual similarly situated male employee. As a result, her allegations as to what would or would not have occurred under such circumstances amount to sheer speculation. Notably, Defendant identified this deficiency in the complaint in its partial motion to dismiss. (ECF No. 18 at 11-12.) But rather than adding context to the allegations in the complaint or seeking to amend it, Plaintiff devotes a full ten pages of its opposition to restating those deficient allegations without any additional explanation or analysis. (*See* ECF No. 24 at 9-19.) The Court finds these allegations are insufficient to support a claim of discrimination based on sex.

---

[1] As discussed above, Plaintiff's allegations that that the criticisms against her were inaccurate, exaggerated, unfair, false, and negative are conclusory. But in any event, Plaintiff bears the burden at this stage to show there is evidence to make a prima facie showing that she was qualified for her position.

### B. ADA Claim (Claim Three)

The Americans with Disabilities Act prohibits discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1). "[T]o establish a prima facie case of disability discrimination a plaintiff must demonstrate that [s]he (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *E.E.O.C. v. C.R. Eng., Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011). To show "discrimination," the plaintiff must establish that she has suffered an adverse employment action because of her disability. *Id.* at 1038.

Assuming for present purposes that Plaintiff is disabled, her ADA claim suffers from the same defects as her Title VII claim. The allegations in the complaint do not establish that she was qualified, with or without reasonable accommodation, to perform the essential functions of her position. Indeed, although the complaint alleges that Plaintiff told Defendant she had "ADHD" or "mild autism" (ECF No. 17 at ¶ 20), there is no mention of any request for accommodation. As discussed above, Plaintiff's assertion that she was qualified for her position simply because she was "the best applicant for the job" (*id.* at ¶ 13) does not hold up to scrutiny. Moreover, once again bypassing the issue of whether Plaintiff experienced adverse employment action for present purposes, there is no allegation that any of the criticism Plaintiff received was related to her disability. Thus, the Court concludes these allegations are insufficient to state an ADA claim.

## IV. CONCLUSION

The partial motion to dismiss (ECF No. 18) is GRANTED, and Claims Two, Three, Four, Five, and Six are DISMISSED WITH PREJUDICE.

DATED this 4th day of April, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge